United States v. Alfredo Pacheco-Martinez Alfredo Pacheco-Martinez United States Mr. Herrick. Good morning, Your Honor. May it please the Court, I am Robert Herrick. I'm here for Alfredo Pacheco-Martinez. Now, with the exception of Count 8 of the indictment, we're really not challenging the convictions in this case, so what I would like to do is move directly to the sentencing issues that are at play. Now, the defendant was ultimately sentenced to the upper range of the guideline, which was 235 months. At the time of sentencing, he was 63 years old. What we're arguing on appeal is that the guideline sentencing range was incorrectly calculated, and we're also arguing that the end result here is just substantively unreasonable. So to get into that, the miscalculation, in our view, of the guideline sentencing range starts with the abuse of trust enhancement. Now, there was a two-level increase for the abuse of a position of trust. I think what is clear from the sentencing record is that the judge found that there was an abuse of a position of private trust in this case. There had been some back and forth during the sentencing hearing about whether or not the defendant had held himself out as being a licensed broker. Ultimately, the judge wound up accepting the basic premise that the evidence was at best equivocal and assumed for the sake of sentencing that, in fact, he had made a disclaimer that he was not a licensed investment broker. So I think we start from the premise that he's being enhanced for the fact of abusing a position of private trust. Now, I think there are two important guidelines or two important principles that I think come into play when we're talking about this guideline, this enhancement. And the first is that not every case that involves an abuse of trust warrants application of this enhancement. I think the district judge agrees with you on that. I think that's true, Your Honor. But I think the second issue that winds up coming into play is what sort of relationship actually is required, what sort of position of trust is required. For purposes of this case, doesn't application note three to the relevant guideline answer that question? Is it specifically as an example, an investment advisor? Well, I would say that it doesn't, Your Honor. And there is a case actually from the First Circuit back in the early 1990s, TARDF, where that question arose. And what the court in TARDF said was that someone who's acting as an investment advisor can have this enhancement applied if they're intimately involved in the financial affairs of the individuals, of the victims in the case. But it didn't say that. TARDF is a case I know fairly well since I wrote it. And TARDF doesn't exclude people. It said in that case that because of the intimate involvement, it was appropriate to apply the enhancement. But here, the case here falls paradigmatically within what the Sentencing Commission has told us in application note three is an appropriate case where the district court, in its discretion, may enhance a sentence for abuse of a position of private trust. Well, what I would say, Your Honor, is I think it remains the case that the position of trust has to meet certain criteria. Now, I think there's an important caveat here, and that is that this court in Sitcher has essentially said that it rejects the majority view of the other courts of appeals in the country, the majority of the other courts of appeals, in the sense that it doesn't require a fiduciary or a fiduciary-like responsibility. So obviously there's a special relationship that must exist. What I would say just in response to Judge Sealy's question is that in this case, we basically have an issue where there is not intimate involvement in the financial affairs of the victims in the case. And the reason I say that is because one of the things that the government reproaches of the defendant, precisely, is that he does too little investigation into the financial background and the financial affairs of the victims. So when he's going in and checking off boxes saying that these are sophisticated investors, when he really has no idea whatsoever, he is not taking full responsibility for the financial affairs of the individuals that are before him. He was very close friends with some of the people who invested in him. He knew that they were people without means. Nonetheless, he enticed them to put what little money they had into this scheme. I believe, I don't remember the precise evidence on this, but at least as to a group of the investors, there is no question in my mind that he abused a position of trust. What I would suggest, Your Honor, is that he certainly abused the trust of other people. What I'm arguing is that the type of trust is not the type of trust that's contemplated. He's an investment advisor. Again, I reject the idea that he's serving as an investment advisor. He's a salesman. You can reject that idea, but the district court is entitled to the benefit of findings that are supported by the record. And it is perfectly clear from her remarks at sentencing and from the transcript that many of these investors relied specifically on the defendant for his advice and representations about how wonderful these investments were. But what I would say, Your Honor, is that every fraud case has an element of abusive trust. There's an abusive trust here. What I'm arguing is that it's not an abuse of the position of trust because there's not a preexisting position. What I would say is that this is an issue that has been addressed by other courts of appeals. The other courts of appeals have basically said that tapping into a social network to get customers slash victims is not the type of relationship that does in fact warrant the application of this enhancement. And just for that proposition, I would just point to Mullins and to Jolly. I don't deny that there's a social relationship that exists. But I would argue that it's not a social relationship. It's a relationship that exists under the enhancement provision. So if you have sophisticated investors and there's a finding that they were sophisticated and that they really weren't relying on this person's expertise, he's more just a vehicle for their investments, that would be one case. I take it, though, that there's sufficient evidence here for the district court to have found that these people were not, or at least some of them, were not in that position. And I'm not sure that there's a reason for people drawing the line where you draw it. Can you help me with that? What I would suggest is that we can look at the way that the campaign was marketed. And certainly there is tapping into a social network. It's not as though every single client was a friend or a personal friend of the defendant. What I guess I would say is that the record is actually quite clear about how he went about getting customers, getting clients. And the record shows very clearly that he was a very effective salesman. What he did was he would be able to present the investment devices or vehicles in such a way that was very impressive. He would present himself in a way that was very impressive. He was able to sell himself and he was able to sell the products. Is there any evidence that there were sophisticated investors? I would say that the vast majority were not sophisticated. There was an attorney who was ultimately one of the victims for what that's worth in terms of sophistication on the financial front. I'm a little unclear about what the argument is that you are presenting. Does the fact that he knows they are not sophisticated investors fall out of the equation? I think it's utterly irrelevant, Your Honor. And I say that it's irrelevant because it's already covered by another provision of the sentencing guidelines. There is a vulnerable victims provision. So you're equating vulnerability with non-sophistication? I am in large part. Well, I would simply just say that the vulnerability that's described is a lack of English language and an obvious lack of financial acumen. So I think the record is clear that these people were not sophisticated. The issues of vulnerability have to do in large part with that lack of sophistication. I think the age also winds up factoring in as well. I don't follow your reasoning. Even if there is some overlap in some cases between the vulnerable victims enhancement, which the district court didn't apply here, so there's no double counting, and the abuse of a position of private trust, I don't see why the mere existence of the vulnerable victims enhancement relates in any material way to the interpretation of the private trust enhancement. Many of the guideline enhancement provisions overlap, and the only stricture that we've handed down is that you can't double count. You can't use the same conduct for both enhancements. With your Honor's permission, if I could just answer that question. Yes, please, go ahead. What I would suggest is that the position, this is not an abuse of trust enhancement, it's an abuse of a position of trust, and what must happen is that the victims have to confer a position of trust upon the individual. This is not a case where a vacuum salesman comes to the door, sells a product that is just defective. This is, I should say, this is a simple sale to individuals who are not relying upon any particular relationship to go ahead and purchase. It's just a good marketer. Good morning, Your Honors. May it please the Court, Susan Jorgenson for the United States. You will have to speak up. I'm sorry, Your Honor. Thank you. There are two main issues in this case. The first is sufficiency of the evidence for count eight, and the second is very sentencing issues. And I would like to ask you to give me a little bit of context on this issue. In Colon Le Day, the First Circuit held that transfer or concealment of any of a debtor's property or the property of any person or corporation violated Section 152.7. That's very true, but it's really rather irrelevant because the problem in this case, if there is one, is with the charging language of the indictment. The question is whether it did, and the specific problem is the language in count eight of the indictment which ties the commission of the offense to the defendant's transfer of his own property. Yes, Your Honor. That's what the problem is. So it's not a Le Day type problem. It's a question of notice under the indictment. Did he get fair notice of the charge? I agree, Your Honor, and I would submit that he did get fair notice of the charge. In the first place, the First Circuit has held that an indictment should be read in a plain and common sense manner. And I believe that this indeed was the case here. Secondly, count eight stated that Pacheco aided and abetted by persons known and unknown in his personal capacity as an agent of IBG APR with intent to defeat the provisions of the bankruptcy code, knowingly and fraudulently transferring concealed property belonging to him to wit the defendant used IBG APR monies. I would submit that this language simply reflects the facts of the case that the defendant used the monies of IBG APR as his own personal piggy bank. So they were interchangeable, and that's why the language of the indictment says that. Read in a plain context, in common sense manner, that's United States v. Mubayad, 658 F3D35, it's clear that the indictment is referring to the fact that he used these monies as his own monies. Those monies were directly collected through his victims and placed in the account by him personally. He opens the account. So I would submit that really the language is no problem. And even if it is, there are other cases that say that so long as the statutory violation remains the same, the jury can convict even if the facts are found to be somewhat different from those charged. And that's United States v. Rodriguez and United States v. Twitty, both in the First Circuit, 1995 and 2008. So I would submit, first of all, the language is plain, and secondly, even if it's not, it's sufficient enough to give him notice of what he's defending against. So that goes to count eight. As to the issues, the sentencing issues, first of all, the abuse of trust, I think that that's a fairly clear issue. There was testimony that he did tell individuals that he had experience with these types of investments and that they were safe. He said he could not guarantee them, but he said in his experience they were very safe. He knew he was dealing with victims who had very limited means, such as the wounded Vietnam War veteran, wounded since 1974, who was relying on his disability payments. He had personal relationships with many of the victims. They were family friendships. He knew the people were of limited means, as I said. There was even one family where he took advantage of the husband, wife, and the niece. Mullins and Jolly are easily distinguishable from this case. Mullins was a country club membership where the individual took advantage of his country club membership. Otherwise, he did not have a relationship with the people at the country club. It was simply that they happened to belong to the same country club. Jolly was a small business owner who solicited loans at arm's length. So I would say that those are two very different cases. As to the argument that he is elderly, the judge did directly address this issue. And she pointed out that many of the victims of Mr. Pacheco were over the age of 60 when they were defrauded, and that they had very limited means. Indeed, during sentencing there was testimony that one of the victims suffered a stroke as a result of this stress and died in an institution. He was not able to take care of himself at home anymore because his life savings were gone. So I think that the judge very clearly considered this. And there are cases in the Seventh Circuit that find that individuals who offend at an elderly age are often more prone to reoffend upon release. If there are any other questions from your honors? Really? That's quite an interesting statistic. What is it based on? Old dogs can't learn new tricks? I believe that was Judge Posner, your honor. I'm channeling Judge Posner. Yes. And I believe that it basically is his premise. And the case in question was an elderly meth dealer who continued to sell meth well into his 70s. I still have a question about that. In this case, how old was he when he was sentenced? He was 60, I believe, but he was 53 at the time of the offenses. He would get out when he was 79, assuming that he served his entire sentence. Which is certainly not a necessarily death sentence these days. We're grateful for that.